## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

**CHRIS NOHLE, ANTHONY GARDYNSKI, JOEY HAINES, DAQUELL SIMMONS, BRANDON HOFFERT, COLE PENDOCK, MICHAEL TERRIZZI, KYLE ROBINSON, KALOB ROBERTS, and ZACHARY KRAJEWSKI and others similarly situated,**

Plaintiffs,

vs.

**ROTO-ROOTER SERVICES COMPANY, INC., ROTO-ROOTER PLUMBING & DRAIN SERVICE, FIRST DOWN BROWN PLUMBING LLC, and MARK STEPOWOY, and RYAN WILLBANKS, individually,**

Defendants.

-----------------------------------------------------------------X

Case No.: _5:25-CV-1688_ (AJB/TWD)

**PLAINTIFFS' CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiffs, Chris Nohle, Anthony Gardynski, Joey Haines, Daquell Simmons, Brandon Hoffert, Cole Pendock, Michael Terrizzi, Kyle Robinson, Kalob Roberts, and Zachary Krajewski, individually and on behalf of all others similarly situated hereby make the following complaint against the Defendants, Roto-Rooter Services Company, Inc., Roto-Rooter Plumbing & Drain Service, First Down Brown Plumbing LLC, Mark Stepowoy, and Ryan Willbanks:

## NATURE OF THE CASE

1.    This is an action to recover unpaid wages, taking unlawful deductions and adjustments from commissions, failure to pay former employees overtime wages while employed, and failure to pay current employees liquidated damages as a result of employer's

1

failure to pay current employees overtime wages when earned, under both federal and New York wage and hour statutes, failure to pay the minimum wage standard under the New York wage and hour statutes and failure to provide notices and statements along with an award of liquidated damages, civil penalties due under New York statutes, and attorneys' fees and costs.

2.     The Plaintiffs are all Technicians working for Roto-Rooter franchises.

3.     As explained in more detail below, the Defendants carried out a scheme under which their policies systematically denied and/or reduced commissions and overtime pay to employees working as Technicians.

4.     For substantial periods of time, Defendants maintained a policy not to pay any overtime to employees working as Technicians.

5.     Second, though the Defendants recently admitted that their policy to not pay overtime to their employees was unlawful, and they made overtime adjustments to pay their current employees overtime that was unpaid, they failed to pay current employees liquidated damages for their failure to pay overtime when earned, and they failed to pay former employees any overtime adjustments at all.

6.     Third, Defendants maintained a policy of making deductions and adjustments to commissions that violated the written policies, commission agreements and New York statutes.

7.     Fourth, at times the regular rate paid to employees was below the minimum wage under the New York wage and hour laws.

8.     These unlawful policies apply to all Technicians and Defendants have saved large amounts of money by unlawfully withholding wages due to the large numbers of employees subjected to these policies.

9.      The Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former employees in the position of Technicians who elect to opt into this action under 29 U.S.C. § 216(b), to remedy violations for Defendants failure to pay overtime consistent with that provisions of the FLSA.

10.     Plaintiffs also bring claims on behalf of themselves and the Class of similarly situated current and former Technicians who work or worked for Defendants as Technicians pursuant to Rule 23 of the Federal Rules of Civil Procedure, for failure to pay agreed-upon wages and overtime, and due to the unlawful deduction and adjustments to commissions in violation of the NYLL ("NYLL"), Article 19, § 650 *et seq.,* Article 6, §§ 190, *et seq.* and 193, and under the supporting New York State Department of Labor Regulations, 12 N.Y. Code Comp. Rules & Regs., Part 142, the NYLL, and the common law.

<u>**THE PARTIES**</u>

**Plaintiffs:**

11.     Plaintiff Chris Nohle (hereinafter "Nohle") is an adult who resides in Adams, New York, and is a current employee of the Defendants.

12.     Nohle started working for the Defendants in January 2024. He became a technician on March 24, 2025, and continues in this position.

13.     Nohle is a covered employee within the meaning of the FLSA and the NYLL.

14.     A written Consent Form under the FLSA for Nohle is attached as Exhibit A to this Class Action Complaint.

15.     Plaintiff Anthony Gardynski (hereinafter "Gardynski") is an adult who resides in Syracuse, New York and is a former employee of the Defendants.

16.    Gardynski started working for the Defendants on August 26, 2024. He became a technician in approximately September 2024 and worked in that position until his departure on or about July 20, 2025.

17.    Gardynski is a covered employee within the meaning of the FLSA and the NYLL.

18.    A written Consent Form under the FLSA for Gardynski is attached as Exhibit A to this Class Action Complaint.

19.    Plaintiff Joey Haines (hereinafter "Haines") is an adult who resides in North Syracuse, New York, and is a current employee of the Defendants.

20.    Haines started working for the Defendants in December 2023. He became a technician approximately May or June 2024 and continues in this position.

21.    Haines is a covered employee within the meaning of the FLSA and the NYLL.

22.    A written Consent Form under the FLSA for Haines is attached as Exhibit A to this Class Action Complaint.

23.    Plaintiff Daquell Simmons (hereinafter "Simmons") is an adult who most recently resides in Jacksonville, North Carolina.

24.    Simmons started working for the Defendants in New York April 2023. He became a technician around May 2023 and continued in that position through his departure on July 26, 2024.

25.    Simmons is a covered employee within the meaning of the FLSA and the NYLL.

26.    A written Consent Form under the FLSA for Simmons is attached as Exhibit A to this Class Action Complaint.

27.    Plaintiff Brandon Hoffert (hereinafter "Hoffert") is an adult who resides in Constableville, New York.

28.     Hoffert started working for the Defendants on August 20, 2024. He became a technician on or about September 23, 2024 and continues to be employed in this position.

29.     Hoffert is a covered employee within the meaning of the FLSA and the NYLL.

30.     A written Consent Form under the FLSA for Hoffert is attached as Exhibit A to this Class Action Complaint.

31.     Plaintiff Cole Pendock (hereinafter "Pendock") is an adult who resides in Baldwinsville, New York.

32.     Pendock started working for the Defendants on September 11, 2024. He became a technician in December, 2024 and continues to be employed in this position.

33.     Pendock is a covered employee within the meaning of the FLSA and the NYLL

34.     A written Consent Form under the FLSA for Pendock is attached as Exhibit A to this Class Action Complaint.

35.     Plaintiff Michael Terrizzi (hereinafter "Terrizzi") is an adult who resides in North Bellmore, New York.

36.     Terrizzi started working for the Defendants in 2021. He became a technician in June 2023 and continued in that position until his departure in June 2024.

37.     Terrizzi is a covered employee within the meaning of the FLSA and the NYLL.

38.     A written Consent Form under the FLSA for Terrizzi is attached as Exhibit A to this Class Action Complaint.

39.     Plaintiff Kyle Robinson (hereinafter "Robinson") is an adult who resides in Syracuse, New York.

40.     Robinson started working for the Defendants in March or April 2024. He became a technician in or about early August 2024 and began working as an hourly employee again on December 23, 2024.

41.     Robinson is a covered employee within the meaning of the FLSA and the NYLL.

42.     A written Consent Form under the FLSA for Robinson is attached as Exhibit A to this Class Action Complaint.

43.     Plaintiff, Kalob Roberts (hereinafter "Roberts") is an adult who resides in Adams, New York.

44.     Roberts started working for the Defendants on or about January 1, 2024. He became a technician in or about May 2024.

45.     Roberts is a covered employee within the meaning of the FLSA and the NYLL.

46.     A written Consent Form under the FLSA for Roberts is attached as Exhibit A to this Class Action Complaint.

47.     Plaintiff, Zachary Krajewski (hereinafter "Krajewski") is an adult who most recently resides in Orlando, Florida.

48.     Krajewski started working for the Defendants in New York on or about the beginning of August 2024. He became a technician in or about October 2024 until he departed on February 2, 2025.

49.     Krajewski is a covered employee within the meaning of the FLSA and the NYLL.

50.     A written Consent Form under the FLSA for Krajewski is attached as Exhibit A to this Class Action Complaint.

51.     Nohle, Gardynski, Haines, Simmons, Hoffert, Pendock, Terrizzi, Robinson, Roberts, and Krjewski are referred to collectively hereinafter as "Plaintiffs").

6

**Corporate Defendants:**

52.     Roto-Rooter Services Company, Inc. ("Roto-Rooter") is a domestic corporation formed in Iowa with a principal place of business and executive office address as 255 E. 5th Street, Ste. 2500, Cincinnati Ohio 45202.

53.     Roto-Rooter is registered as a foreign corporation under the laws of the state of New York, authorized to do business in New York, and with a place of business in New York.

54.     Roto-Rooter is an employer engaged in plumbing, including repair service, technical service, and maintenance.

55.     Upon information and belief, Roto-Rooter employs at least 500 people, including Technicians, but the actual amount is unknown given it is a national company.

56.     Roto-Rooter Plumbing & Drain Service ("Roto-Rooter") headquarters and principal place of business is in Cincinnati, Ohio at 255 E. 5th St., Cincinnati, OH 45202.

57.     Roto-Rooter has franchises nationwide, including in New York, one of which was First Down Brown.

58.     Roto-Rooter operates more than 120 company-owned service locations, including locations where the individual Plaintiffs worked, which provide plumbing repair and maintenance services.

59.     Roto-Rooter also has more than 400 independent franchises in the US and in Canada in addition to other international Roto-Rooter service company franchises.

60.     Roto-Rooter is a covered employer within the meaning of the FLSA and NYLL, is subject to these statutes, and at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

61.     Upon information and belief, as franchisor, Roto-Rooter created the employment policies and imposed their employment policies on their employees and their franchisees.

62.    Despite maintaining a written employment policy in its Handbook that correctly admitted that Technicians were not exempt from overtime pay, Roto Rooter in reality maintained a policy and practice to not pay these employees overtime.

63.    Roto-Rooter created the employment policies and imposed the illegal adjustment of commissions on their employees, and their franchisees followed such policies.

64.    Upon information and belief, at all times relevant, Roto-Rooter's annual gross volume of sales and business was not less than $500,000.

65.    First Down Brown Plumbing LLC ("First Down Brown") is a franchise of Roto-Rooter located in Phoenix, New York in Oswego County.

66.    First Down Brown was organized and still is a foreign limited liability company under and by virtue of the laws of the state of New York since 2023 with a place of business in New York in Onondaga County, and its principal place of business located at 7001 Wooster, Pike, Medina, OH 44256.

67.    First Down Brown is an employer engaged in plumbing, including repair service, technical service and maintenance.

68.    Upon information and belief, First Down Brown employs at least 500 people, including Technicians.

69.    Upon information and belief, at First Down Brown, the majority of employees are Technicians.

70.    First Down Brown is a covered employer within the meaning of the FLSA and NYLL, is subject to these statutes, and at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

71.     Upon information and belief, as franchisee, First Down Brown failed to follow the employment policies in Roto-Rooter's Handbook for Technicians for overtime or created and/or subjected their own overtime employment policies onto their employees.

72.     As franchisee, First Down Brown followed the employment policies in Roto-Rooter's Handbook related to the illegal adjustment of commissions and in part also created and/or subjected their own policies related to the illegal adjustment of commissions policies onto their employees.

73.     Upon information and belief, at all times relevant, First Down Brown's annual gross volume of sales and business was not less than $500,000.

**Individual Defendants:**

74.     Mark Stepowoy (hereinafter "Stepowoy") and Ryan Willbanks (hereinafter "Willbanks") maintained control over, and/or directed the operation of First Down Brown, including its employment practices, during the relevant period for all franchises of Roto-Rooter, at all relevant times.

75.     Willbanks is the owner of several Roto-Rooter companies as of May 2015, including but not limited to locations in Springfield, Missouri, and Joplin Missouri as well as Wausau, Wisconsin, and Danville and Blacksburg, Virginia.

76.     Upon information and belief, Stepowoy started out in or about 1999 at Roto-Rooter and eventually pursued his own plumbing business, and held an interest in, and/or owned, several Roto-Rooter franchises, one of them being First Down Brown Plumbing LLC.

77.     First Down Brown's CEO, Willbanks, the owner of several Roto-Rooter franchises and he sold his interest in Roto-Rooter franchise First Down Brown to his partner Mark Stepewoy, who took over the business of Roto-Rooter's franchise First Down Brown in 2025.

78.     The Willbanks and Stepowoy managed and/or operated First Down Brown, at all relevant times.

79.     During all times relevant, Willbanks and Stepowoy were employers under the FLSA and NYLL and employed or jointly employed Plaintiffs and similarly situated employees.

80.     Upon information and belief, throughout the relevant period, the individual Defendants had the power to control the operations and compensation practices at First Down Brown.

81.     Upon information and belief, Stepowoy is a resident of the state of Florida.

82.     At all relevant times, Stepowoy was a partner of Willbanks, and senior executive of First Down Brown.

83.     Later in 2025, Stepowoy purchased and currently holds all of the interest in First Down Brown.

84.     Stepowoy is the owner and operator of First Down Brown, and exercised day-to-day control of its operations, and was centrally involved in the supervision and payment of compensation and benefits paid and provided to employees.

85.     Stepowoy was involved in managing employee work hours and conditions including those related to overtime.

86.     Stepowoy determined employee compensation structures and payment methods and also followed the compensation structures and payment methods created by Roto-Rooter and applied by its franchisees such as First Down Brown.

87.     Stepowoy determined the employees' rate of pay and frequency of payment.

88.     Stepowoy was responsible for keeping employment -related records, such as payroll, records related to customer service and other records.

89.     Upon information and belief, at all relevant times, Stepowoy has had power over personnel and employment decisions at First Down Brown, including the power to hire and fire employees, set their wages, and otherwise control and set the terms and conditions of their employment, including on behalf of Roto-Rooter.

90.     Upon information and belief, at all relevant times, Stepowoy had power over payroll decisions at First Down Brown, including the power to withhold wages, pay overtime, and make deductions and adjustments against commissions.

91.     Upon information and belief, at all relevant times, Stepowoy was actively involved in managing the day-to-day operations of First Down Brown and is the sole owner.

92.     Upon information and belief, at all relevant times, Stepowoy had the power to stop any illegal pay practices that harmed Plaintiffs.

93.     At all relevant times, Stepowoy was also aware of the illegal pay practices that harmed Plaintiffs.

94.     Stepowoy is a covered employer within the meaning of the FLSA and NYLL and at all times relevant, employed and/or jointly employed Plaintiffs in similarly situated employees.

95.     Upon information and belief, Willbanks is a resident of the state of Missouri.

96.     At all relevant times, Willbanks was a partner with Stepowoy, and CEO of First Down Brown and later in 2025, Willbanks sold all of the interest in First Down Brown to Stepowoy.

97.     Willbanks is the owner and operator of First Down Brown, and exercised day-to-day control of its operations, and was centrally involved in the supervision and payment of compensation and benefits paid and provided to employees.

98.    Willbanks was involved in managing employee work hours and conditions including those related to overtime.

99.    Willbanks determined employee compensation structures and payment methods and also followed the compensation structures and payment methods created by Roto-Rooter and applied by its franchisees such as First Down Brown.

100.    Willbanks determined the employees' rate of pay and frequency of payment.

101.    Willbanks was responsible for keeping employment -related records, such as payroll, records related to customer service and other records.

102.    Willbanks has had power over personnel and employment decisions at First Down Brown, including the power to hire and fire employees, set their wages, and otherwise control and set the terms and conditions of their employment, including on behalf of Roto-Rooter.

103.    Willbanks had power over payroll decisions at First Down Brown, including the power to withhold wages, pay overtime, and make deductions and adjustments against commissions.

104.    Willbanks was actively involved in managing the day-to-day operations of First Down Brown.

105.    Willbanks had the power to stop any illegal pay practices that harmed Plaintiffs.

106.    Willbanks was also aware of the illegal pay practices that harmed Plaintiffs.

107.    Willbanks declined to pay the Technicians overtime in or about August 2025, when a former manager made him aware that the Technicians were not exempt from overtime payments.

108.    Soon thereafter, Willbanks sold off all of his interest in First Down Brown to Stepowoy his partner, in order to try to avoid personal liability under the law because he knew that his failure to pay overtime was in violation of law.

109.    Willbanks never informed the current or former employees of the failure to pay overtime, and even refused when brought to his attention, and did not pay current or former Technicians for any overtime adjustment.

110.    Willbanks concealed the failure to pay overtime to the current and former employees.

111.    Willbanks owns several Roto-Rooter franchises, and he was aware of the Roto-Rooter Handbook and the policy that Technicians were not exempt from overtime.

112.    Willbanks owns several Roto-Rooter franchises, and he was aware of the Roto-Rooter Handbook and the policy of illegal and unlawful adjustments from commissions to reduce the amount of commissions paid to Technicians.

113.    Willbanks and the Corporate Defendants intentionally concealed and willfully failed to comply with the law.

114.    Willbanks is a covered employer within the meaning of the FLSA and New York labor law and at all times relevant, employed and/or jointly employed Plaintiffs in similarly situated employees.

## JURISDICTION AND VENUE

115.    The Court has subject matter jurisdiction over Plaintiffs FLSA claims under U.S. Constitution Art. III, § 2, 28 U.S.C. §§ 1331 & 1337, and 29 U.S.C. § 216(b) because those claims arise under federal statutes.

116.    The court has supplemental jurisdiction over the Plaintiff's state law claims under U.S. Constitution Art. III, § 2, and 28 U.S.C. § 1367 because Plaintiffs' state law claims are so

closely related to the claims under the FLSA that they form part of the same case or controversy under Article III of the U.S. Constitution.

117.    This Court has personal jurisdiction over the Defendants under Federal Rule of Civil Procedure 4(k) and New York Civil Practice Law and Rule 302(a)(1) because the Defendants all transacted business in New York state and are therefore subject to a court of general jurisdiction in New York state.

118.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2022.

119.    Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district.

## PLAINTIFFS' FACTUAL ALLEGATIONS

120.    Defendants, First Down Brown and Roto-Rooter, employed and/or jointly employed Plaintiffs and similarly situated employees at all times relevant. Each defendant has had substantial control over Plaintiffs wages and commissions and over the unlawful policies and practices alleged herein.

121.    During all relevant times Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.

122.    Upon information and belief, Defendants are part of a single integrated enterprise that employed Plaintiffs and similarly situated employees at all times relevant.

123.    Upon information and belief, Defendants' operations are interrelated and unified.

124.    Defendant Roto-Rooter is a franchisor, and First Down Brown is a franchisee of Roto-Rooter, and as franchisee, imposed the same employment policies of Roto-Rooter.

14

125.    During all relevant times, the Employee Handbook of Roto-Rooter also applied to the employees of First Down Brown.

126.    Upon information and belief, some of the Technicians including but not limited to similarly situated employees, worked for Roto-Rooter, First Down Brown, or both companies, and in either case, were subject to the same unscrupulous and illegal policies.

127.    Upon information and belief, during all relevant times, both Defendants shared a common management and were centrally controlled and/or owned by Defendants.

128.    During all relevant times, Defendants had control over the power to change compensation practices but failed to do so.

129.    Upon information and belief, Defendants had the power to determine employee policies, including but not limited to the payment of wages, overtime, deductions and adjustments from commissions and commission chargebacks.

130.    Roto-Rooter and First Down Brown's success has come at the expense of its Technicians for whom it failed to pay overtime as required by the agreed-upon wages for Technicians.

131.    Stepowoy admitted to the failure to pay the Technicians overtime in or about August 2025, and admitted that such overtime was owed, exposing him to personal liability under the law.

132.    In connection with this admission, Stepowoy made an announcement that overtime that was unpaid would be paid to employees, because he did "not want to go to jail" as a result of his admission that overtime was not paid in violation of law.

133.    Stepowoy's announcement by text on July 11, 2025 stated in pertinent part:

    a.  Overtime. As I mentioned in our meeting this past Tuesday morning, … [y]ou will regularly be paid that premium starting the week that ends Sunday, July

13, 2025 in your weekly direct deposit. Additionally, our Accounting and Human Resource staff is working with past data to calculate the overtime money owed since the beginning of your commissioned employment with our company. It may take a week or two, but you will be getting additional payments shortly for your prior overtime earned but not paid.

134.    Stepowoy concluded "It's all about integrity. Our company has been profitable, but performance has been a little weak."

135.    Stepowoy made these promises in order to induce the employees not to file a lawsuit against the company and against Stepowoy personally to hold them personally liable for the employment practices, and to hide the fact that Stepowoy and the other Defendants were not paying the employees all that they were entitled to as wages, including liquidated damages.

136.    Stepowoy had its payroll issue checks to the currently employed Technicians for what they claimed were the amount of overtime due to the employees.

137.    A compensation spreadsheet was provided to some of the currently employed Technicians who requested such information but not to others.

138.    The compensation spreadsheet demonstrated Defendants paid the amount of overtime correctly plus interest but did not pay liquidated damages to the current Technicians that received an overtime adjustment.

139.    Defendants did not pay any liquidated damages to the currently employed Technicians that received an overtime adjustment.

140.    Stepowoy and the Corporate Defendants also reduced the amount of overtime adjustments they paid to the currently employed Technicians by starting the pay period for overtime in January 2025 even if the Technicians had worked over 40 hours a week before January 2025 and were entitled to overtime.

141.    For example, Roberts received what the employer claimed was pay representing overtime adjustments, but the payments started in January 2025 although he was a Technician from May 2024.

142.    Haines received what the employer claimed was pay representing overtime adjustments, but the payments started from January 2025 although he was employed as a Technician from May/June 2024.

143.    Gardynksi received what the employer claimed was pay representing overtime adjustments before he departed employment, but the payments started from January 2025 although he was employed as a Technician from August 2024.

144.    Stepowoy and the Corporate Defendants did not inform any formerly employed Technicians of their failure to pay overtime and did not pay formerly employed Technicians any overtime adjustment and interest plus liquidated damages.

145.    Stepowoy and the Corporate Defendants concealed their admission that they failed to pay overtime to the former Technicians who never received notice and never received any payment of overtime or liquidated damages.

146.    Stepowoy was aware of the Roto-Rooter Handbook and the policy of illegal and unlawful adjustments from commissions to reduce the amount of commissions paid to Technicians.

147.    Stepowoy and the Corporate Defendants intentionally concealed and willfully failed to comply with the law.

148.    In addition to failing to pay overtime to the Technicians who were not exempt from overtime, including under the 2022 Handbook, Roto-Rooter and First Down Brown also

manipulated and reduced gross commissions through the means of several unauthorized and illegal adjustments to their Technicians commissions.

149.    Pursuant to the agreements in writing, Technicians would receive a certain percentage as agreed upon in commissions on the gross profit of any job.

150.    Notwithstanding the agreement with the Technicians, Defendants designed and implemented an ongoing scheme whereby they manipulated the gross profits of commissions, thereby reducing the Technicians' commissions to increase their profits.

151.    The Defendants as employers took unlawful deductions to cover the employers' business expenses, wrongfully shifted business expenses to Technicians and other Technicians by demanding they bear the brunt of certain business expenses of the employer, including for the use and maintenance of company equipment and surcharges, and company expenses even for labor and revenue from labor, and they also wrongfully deducted money from the Technicians' paychecks for impermissible purposes and without permission or knowledge, and inconsistently at times, with a Roto-Rooter Employee Handbook dated 2022 ("Handbook"), deducted a customer's bad check against the Technicians pay, and made periodic chargebacks from wages to account for certain business expenses, including warranty work for an unlimited period of time, and outstanding customer balances for an unlimited period of time.

152.    The Defendants manipulated gross commissions by means of taking unauthorized and illegal adjustments and deductions to reduce the commissions in addition to concealing how commissions were calculated.

153.    Commissions that were owed to Technicians were legally reduced by the imposition of these illegal chargebacks and adjustments used to choose the gross profits including but not limited to unexplained charges.

154.    The reduction of the commissions owed, by imposition of these chargebacks is in violation of the NYLL.

155.    Costs and maintenance for employer owned equipment used for services to customers were illegally charged to the Technicians thereby reducing their commissions.

156.    Defendants also charged the Technicians for lateness, failure to properly fill out forms and other arbitrary and purported infractions and subjected them to numerous unexplained chargebacks and were not provided with an itemization or breakdown of the commissions and how they were calculated.

157.    The issues with the failure to pay overtime were brought to the attention of the CEO Willbank by a former manager, after a former manager questioned him about the Handbook and the policy that all employees were subject to overtime payments and were not exempt, including Technicians.

158.    Willbanks refused to pay overtime, and thereafter, upon information and belief, in 2025, Willbanks sold his interest in the franchise to his partner Stepowoy.

159.    Soon thereafter, on or about July 11, 2025, Stepowoy admitted that Technicians were not exempt from and entitled to overtime pay and announced that the Technicians would be paid overtime previously unpaid because he did "not want to go to jail" and would be paid overtime going forward.

160.    Thereafter, the currently employed Technicians received an amount Defendants claimed was the amount of overtime adjustment they were owed plus interest, but no liquidated damages, and at least some of the currently employed Technicians only received overtime adjudgments from January 2025 even if they were Technicians before January 2025.

161.    The former Technicians were not notified and received no overtime adjudgment, interest or liquidated damages from Defendants at all.

162.    Plaintiffs sustained direct and proximate financial harm as a result of Defendants' unscrupulous business practices in violation of the federal and New York statute, perpetrated by Defendants in order to avoid payments to their employees.

163.    Consistent with Defendants' policies, patterns or practices as described herein, Defendants harmed Plaintiffs individually as follows:

**<u>Current Employees</u>: Nohle, Haines, Hoffert, Pendock, Robinson and Roberts**

164.    Defendants did not pay Nohle, Haines, Hoffert, Pendock, Robinson and Roberts overtime and other wages when earned as part of their weekly pay, for all the time they were suffered or permitted to work while toiling for hours beyond the 40 hour workweek on behalf of the Defendants and due to Defendants policies, patterns or practices.

165.    As explained in more detail below, Nohle, Haines, Hoffert, Pendock, Robinson and Roberts generally worked Monday through Friday, except for times when they took vacation, sick days or holidays, and this work week included weekends when they were placed on weekend call which rotates approximately one or twice a month dependent on the employees available.

166.    Nohle, as a Technician, worked overtime weekly unless on vacation, sick time or other time off, which, on average was at least 50 to 55 hours per work week and he was paid on a weekly basis, and when placed on weekend calls, Nohle' hours increased to an average of 60 to 70 hours per week.

167.    Haines, as a Technician worked overtime weekly unless on vacation, sick time or other time off, which, on average was at least 50 to 55 hours per work week and was paid on a

weekly basis, and when placed on weekend calls, Haines' hours increased to an average of 60 to 70 hours per week.

168.    Hoffert and Pendock, as Technicians worked weekly overtime unless on vacation, sick time or other time off, which, on average was at least 50-55 hours per work week and was paid on a weekly basis, and when placed on weekend calls, their overtime hours increased.

169.    Robinson, as a Technician, worked overtime weekly unless on vacation, sick time or other time off, which, on average was at least 50-60 hours per work week and was paid on a weekly basis, and when placed on weekend calls, his weekly hours increased.

170.    Roberts, as a Technician, worked overtime weekly unless on vacation, sick time or other time off, which on average was at least 50-60 hours per work week and was paid on a weekly basis, and when placed on weekend calls, his weekly hours increased.

171.    Defendants failed to pay Nohle, Haines, Hoffert, Pendock, Robinson and Roberts overtime and they understood from the employer that they were not entitled to and exempt from overtime payments until an issue was raised which eventually resulted in the employers' admission that Technicians were not exempt from overtime, but had not been paid overtime.

172.    Defendants admitted that Nohle, Haines, Hoffert, Pendock, Robinson and Roberts were not exempt from overtime wages, and that they violated the law.

173.    Defendants issued payments to each of Nohle, Haines, Hoffert, Pendock, Robinson and Roberts in or about July 2025 which they claimed represented payment of overtime wages previously unpaid.

174.    Defendants only paid overtime from January 2025 although some of the Technicians were owed overtime payments before January 2025.

175.    The Defendants did not pay any liquidated damages for failing to pay overtime when earned.

176.    While Defendants were not paying overtime to their Technician Nohle worked over 69 hours in a work week in June 2025 and was paid $1,083.88 at his regular rate and not paid any overtime for that work week.

177.    For example, Robinson had 98.5 hours equal to 58.5 hours of overtime for a work week while a Technician and was paid approximately $2,000.00 at his regular rate and not paid any overtime for that work week.

178.    Defendants also violated the NYLL minimum wage provisions because at times the commissions they earned divided by the hours they worked in a week, resulted in Technicians being paid a regular rate below the minimum wage standard.

179.    For example, Nohle had four (4) hours of overtime in the week of September 15, 2025 and was paid $60. The $60 he received as commissions for that work week divided by 4 hours of overtime is $15 an hour overtime rate, although he was paid only $10.00 an hour as his regular rate below the minimum wage, in violation of NYLL.

180.    Defendants also withheld payment of commissions earned due to their improper practices of making illegal deductions.

181.    In at least one case, when Hoffert informed the employer that he was not paid for work per his most recent commission agreement dated August 28, 2025, and that his wages were inaccurate, Defendants presented him with another commission agreement on September 15, 2025, backdated to August 4, 2025, to cover the incident of non-payment of wages and to avoid liability.

182.    In another incident, Hoffert also notified the employer that he was not paid for 2-3 days out of a 5 day work week which Human Resources admitted was incorrect, but Aaron, the manager from corporate headquarters told him he would look into it and never circled back.

183.    In other cases, the reduction in wages was so brutal as a commission employee that certain employees asked to be changed back to regular hourly wages, one of which was Pendock, who requested to be changed to hourly wages for many months before the employer changed him to hourly on September 8, 2025, and the other Hoffert, who was repeatedly denied his request to change to hourly based on nothing but an excuse that he would not make as much money.

184.    Defendants also imposed a Rule that employees were required to sign weekly time sheets acknowledging and approving all adjustments that would reduce commissions, even before the Technicians knew of the amount and nature of adjustments, although they would have no knowledge whether it would result in future unlawful adjustments, to reduce wages.

185.    Defendants thereby made reductions from the wages of Nohle, Haines, Hoffert, Pendock, Robinson and Roberts that were not in accordance with the provisions of any law, Rule or regulation, and not expressly authorized by them or made for their benefit.

186.    Defendants failed to pay liquidated damages due to their failure to pay overtime when earned, and in some cases, reduced the amount of overtime owed, illegally deducted and made adjustments from commissions, and failed to furnish Nohle, Haines, Hoffert, Pendock, Robinson and Roberts with accurate statements of wages, hours worked, overtime, rates, and gross wages, including, but not limited to, an itemization of their deductions from commissions, or an accurate annual wage notices.

**Former Employees**: **Gardynski, Terrizzi, Simmons, and Krajewski**

187.    Defendants did not pay Gardynski, Terrizzi, Simmons, and Krajewski overtime and other wages as part of their weekly pay, for all the time they were suffered or permitted to work while toiling for hours beyond the 40 hour workweek on behalf of the Defendants and due to Defendants policies, patterns or practices while they were employed by Defendants.

188.    Gardynski, Terrizzi, Simmons, and Krajewski overtime worked Monday through Friday, except for times when they took vacation, sick days or holidays, and this work week included weekends when they were placed on weekend call which rotates approximately one or twice a month dependent on the employees available.

189.    Gardynski, as a Technician, worked on average at least 50 to 55 hours per work week and was paid on a weekly basis, and when placed on weekend calls, Gardynski's hours increased to an average of 60 to 70 hours per week.

190.    Terrizzi, as Technician worked on average at least 70-80 hours per work week and was paid on a weekly basis.

191.    Simmons as a Technician, worked on average at least 50 to 55 hours per work week and was paid on a weekly basis, and when placed on weekend calls, Simmons' hours increased to an average of 60 to 70 hours per week.

192.    Krajewski as a Technician, worked on average at least 50 to 55 hours per work week and was paid on a weekly basis, and when placed on weekend calls, Krajewski' hours increased to an average of 60 to 70 hours per week.

193.    Gardynski, Terrizzi, Simmons, and Krajewski understood from the employer that they were not entitled to and exempt from overtime payments until an issue was raised which eventually resulted in the employers' admission to their currently employed Technicians that they were not exempt from overtime, but had not been paid overtime.

194.    Defendants did not inform the former Technicians of their violation of the law and failure to pay overtime, and Defendants failed to pay their former Technicians any overtime adjustments (with one exception, Gardynski, who was still employed by Defendants at the time of Defendants admission until he departed on July 20, 2025).

195.    Gardynski received what Defendants claimed was the amount of overtime adjustment plus interest, but no liquidated damages, and he was not provided with any calculation or statement of overtime. Or

196.    Otherwise, Defendants did not pay their former Technicians any overtime or adjustments, interest and liquidated damages.

197.    Defendants also withheld payment of commissions earned due to their improper practices of making illegal deductions to reduce such commissions.

198.    Defendants also imposed a rule that the employees were required to sign weekly time sheets acknowledging and approving all adjustments that would reduce commissions, even before the Technicians knew of the amount and nature of adjustments, including adjustments for advances although they would have no knowledge whether it would result in future adjustments to reduce pay.

199.    Defendants thereby made reductions from the wages of Gardynski, Terrizzi, Simmons, and Krajewski when they were employed, that were not in accordance with the provisions of any law, rule or regulation, and not expressly authorized by them or made for their benefit.

200.    Defendants failed to pay their former Technicians overtime and interest (except Gardynski), and Defendants failed to pay liquidated damages and illegally deducted and made adjustments from the commissions, of Gardynski, Terrizzi, Simmons, and Krajewski, and failed

to furnish them with accurate statements of wages, hours worked, overtime, rates, and gross wages, including, but not limited to, an itemization of their deductions from commissions, or an accurate annual wage notice.

## COLLECTIVE ACTION ALLEGATIONS

201.    Plaintiffs bring the First cause of action, for unpaid overtime wages, liquidated damages, and attorney fees under the FLSA, on behalf of themselves and all similarly situated persons who have worked as Technicians for Defendants, who elect to opt into this action under 29 U.S.C. § 216(b) (the "FLSA Collective").

202.    Defendants are liable under the FLSA for, among other things, failing to properly compensate Plaintiffs. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. 216(b).

## CLASS ACTION ALLEGATIONS

203.    Plaintiffs bring the Second through Seventh causes of action, under the NYLL and common law, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class of persons consisting of the following:

> All persons who have worked as Technicians for any Roto-Rooter franchise in New York between December 1, 2019 within the 6-year statute of limitations, and the date of final judgment in this matter, for the Rule 23 Class.

> All persons who have worked as Technicians at First Down Brown in New York between December 1, 2019, within the 6-year statute of limitations, and the date of final judgment in this matter, for the Rule 23 Class.

204.    Excluded from the Rule 23 Class are Defendants; Defendants' legal representatives, officers, directors, signs, and successors, or any individual who has or will or who has had at any time during the Class period a controlling interest in Roto-Rooter and/or First Down Brown; the judges to whom this case is assigned and any Members of the judge's immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

205.    The employees in the Rule 23 Class are so numerous that joinder of all Members is impracticable.

206.    Upon information and belief, at the very least, including all Roto Rooter franchises, there are 100 or more Rule 23 Class Members (the "Rule 23 Class"), and although the precise number of such employees is unknown, the relevant facts are presently within the sole control of Defendants.

207.    The number and identity of the Rule 23 Class are determinable from the Defendants' records. The hours assigned and worked, positions held, pay, commissions, and failure to pay overtime, for each of the Rule 23 Class is readily determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants' records, and notice can be provided by means permissible under the Federal Rules of Civil Procedure.

208.    The Rule 23 Class are so numerous that joinder of all Members is impracticable, and the disposition of the claims of the Rule 23 Class will benefit the Parties and the Court.

209.    The Plaintiffs' claims are typical of those claims which could be alleged by any of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each of the Rule 23 Class in a separate action.

27

210.    All of the Rule 23 Class were subject to the same corporate practices of Defendants as alleged herein, of failing to pay overtime wages, and illegal deductions from commissions, and failing to provide proper annual wage and hour notices and failing to provide proper wage statements.

211.    The Plaintiffs and Rule 23 Class have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and with the standard commission agreement the Defendants entered into with the Class Members.

212.    The Plaintiffs and Rule 23 Class have all been injured and under-compensated due to Defendants common policies, practices, and patterns of conduct, and Defendants corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same unfair and/or wrongful acts.

213.    The Plaintiffs and Rule 23 Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

214.    The Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interest antagonistic to the Rule 23 Class Members.

215.    The Plaintiffs are represented by attorneys who are experienced and competent in both Class-action litigation and employment litigation and previously represented many wage and hour cases.

216.    A Class action is superior to other available means for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.

217.    Class-action treatment will permit a large number of similarly situated persons to prosecute the common claims in a single form simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Rule 23 Class Members are small in the sense and pertinent to a Class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for individual Rule 23 Class Members to redress the wrongs done to them.

218.    Important public interests will be served by addressing the matter as a Class action. The adjudication of each of the Rule 23 Class claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class action would result in significant savings of these costs. The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to each individual Rule 23 Class Member, establishing incompatible standards of conduct for Defendants and resulting in impairment of all 23 Class Members' rights and dispositions of their interest through actions to which they are not parties. The issues in this action can be decided by means of common, Class-wide proof, and the Court can, and is empowered to, fashion methods to efficiently manage this action as a Class action.

219.    Upon information and belief, Defendants violated the NYLL, and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, while former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who were not named in the Complaint with a degree of anonymity, which allows for the vindication of their rights by eliminating or reducing these risks.

220.    This action is properly maintainable as a Class-action under Federal Rule of Civil Procedure 23(b)(3).

221.    Defendants acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate, final relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

222.    The common questions of law as to the Rule 23 Class that predominate over any questions only affecting them individually. include, but are not limited to, the following:

    a.    Whether Defendants violated NYLL Article 6, § 190 *et seq.,* and Article 19, 650 *et seq.,* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 137, as alleged herein;

    b.    Whether Defendants failed to pay Plaintiffs and the Rule 23 Class agreed upon wages;

    c.    Whether Defendants' failure to pay overtime payments to the Plaintiffs and the Rule 23 Class when earned, was instituted willfully or with reckless disregard of the law;

    d.    Whether Defendants' issuance of overtime payments to the Plaintiffs and the Rule 23 Class consisting of current employees plus interest but without paying liquidated damages, was instituted willfully or with reckless disregard of the law;

    e.    Whether Defendants' issuance of overtime payments that were previously owed and unpaid to the Plaintiffs and the Rule 23 Class consisting of current employees from January 2025 even if certain employees were entitled to overtime payments before January 2025, was instituted willfully or with reckless disregard of the law;

    f.    Whether Defendants' failure to make the same overtime payments that were previously owed and unpaid to the Plaintiffs and the Rule 23 Class to any former employees plus interest and liquidated damages, was instituted willfully or with reckless disregard of the law;

    g.    Whether Defendants regularly failed to pay below minimum wage payments, based on the commissions divided by the number of hours

worked, to Plaintiffs and the Rule 23 Class, was instituted willfully or with reckless disregard of the law;

h.      Whether Defendants failed to pay Plaintiffs and the 23 Class all monies earned in accordance with the commission agreement, as required by NYLL *et seq*.;

i.      Whether Defendants made unlawful deductions and illegal adjustments to Plaintiffs and the Rule 23 Class commissions in violation of the NYLL 193, *et seq.*;

j.      Whether Defendants' reduction from gross commissions by taking unlawful adjustments before paying Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law;

k.      Whether Defendants' policy of taking illegal deductions from wages before paying Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law;

l.      Whether Defendants failed to furnish Plaintiffs in the Rule 23 Class with accurate statements of earnings, including overtime and overtime adjustments as required by the NYLL;

m.      Whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with a proper statement with every payment of commissions, overtime, and proper wage notices as required by the NYLL; and

n.      Whether Defendants also misclassified employees for purposes of formulating a pretext for non-payment of overtime and misclassified employees for purposes of formulating a pretext to reduce commissions by using the split commission adjustment, although the extra labor involved regular hourly workers; and

o.      The nature and extent of the Class-wide injury and measure of damages for those injuries.

**FIRST CAUSE OF ACTION**
**FLSA - Failure to Pay Overtime Wages to Former Technicians &**
**Reduced Overtime Wages Paid to Current Employed Technicians**
**(On behalf of Plaintiffs and all FLSA Collective Members)**

223.    Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

224.    Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action.

225.    At all relevant times, each of the Defendants has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, each Defendant has employed "employee[s]" including Plaintiffs and the FLSA Collective Members.

226.    The FLSA requires employers to pay non-exempt employees one- and one-half times the regular hourly rate for all hours worked past 40 hours in a week. 29 U.S.C. § 207(a)(1). The employee's regular hourly rate is determined by dividing the employee's total remuneration in a given workweek - including commissions - by the number of hours the employee worked during that workweek. 29 C.F.R. § 778.118.

227.    Technicians must therefore be paid an overtime premium of one-half the regular rate for that workweek, in addition to their commission wages. 29 C.F.R. § 778.118.

228.    Each Plaintiff and FLSA Collective member was paid on a commission basis and worked over 40 hours in at least one workweek during the three years preceding the filing of this complaint.

229.    Defendants failed to pay Plaintiffs and the FLSA Collective Members, the amounts to which they are entitled under the FLSA.

230.    Defendants paid no overtime premium at all to the former Technicians.

32

231.    Despite Defendants' admission that Technicians were entitled to overtime wages on July 11, 2025, no overtime adjudgments have been made by Defendants to their former Technicians, and they have not been notified of Defendants' admission.

232.    Some of the Plaintiffs, as currently employed Technicians, received overtime adjustments from January 2025 although some of these Plaintiffs were Technicians before January 2025 and were not paid all of their overtime plus interest and liquidated damages.

233.    Defendants unlawful conduct, as described in this Class Action Complaint herein, has been willful and intentional since Defendants were aware and should have been aware the practices described in this Class Action Complaint were unlawful and Defendants made no good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Members.

234.    Because Defendants violations of the FLSA have been willful, a three-year statute of limitation applies. 29 U.S.C. § 255(a).

235.    As a result of Defendants willful violations of the FLSA, the Defendants are liable to the Plaintiffs and the FLSA Collective for unpaid overtime wages in amounts to be determined at trial, liquidated damages in an amount equal to the amount of unpaid wages, prejudgment interest, attorney's fees, and costs, as well as injunctive relief under 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NYLL - Unpaid Overtime to Former Technicians & Reduced**
**Overtime Wages Paid to Current Employed Technicians**
**(On behalf of Plaintiffs and all Rule 23 Class Members)**

236.    Plaintiffs, on behalf of themselves and the Rule 23 Class, reallege and incorporate by reference all allegations in all preceding paragraphs.

237.    Defendants are employers and Plaintiffs and Rule 23 Class are former Technicians under the NYLL and the applicable wage order.

238.    Each Plaintiff worked over 40 hours in at least one work week during the statute of limitations and were not exempt from overtime to be paid for all hours over 40 in a workweek.

239.    As far back as Plaintiffs have been employed, Defendants paid no overtime premium at all to their former Technicians.

240.    Despite Defendants' admission that Technicians are and always were entitled to overtime wages on July 11, 2025, no overtime adjudgments have been made by Defendants to their former Technicians, and they have not been notified of Defendants' admission.

241.    Defendants failed to pay former Technicians the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

242.    Some of the currently employed Technicians received overtime adjustments from January 2025 although some of these Plaintiffs were Technicians before January 2025 and were not paid all of their overtime plus interest and liquidated damages.

243.    Defendants failed to pay Plaintiffs and the Rule 23 Class Members who are former Technicians one-and-one-half  times the regular rate for all work in excess of 40 hours per workweek.

244.    Defendants failed to pay all overtime owed.

245.    Through their knowing or intentional failure to pay Plaintiffs and the Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, § 650 *et seq.,* and supporting New York State Department of Labor Regulations.

246.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid wages, compensatory

damages, liquidated damages as provided by the NYLL, reasonable attorney's fees, costs, and

pre-judgment and post-judgment interest, plus civil penalties. NYLL §§ 198, 663.

**THIRD CAUSE OF ACTION**
**FLSA - Failure to Pay Liquidated Damages for Overtime Wages to**
**Currently Employed Technicians**
**(On behalf of Plaintiffs and all FLSA Collective Members)**

247.    Plaintiffs, on behalf of themselves and the FLSA Collective, reallege and

incorporate by reference all allegations in all preceding paragraphs.

248.    Defendants engaged in a widespread pattern, policy, and practice of violating the

FLSA, as detailed in this Class Action.

249.    At all relevant times, each of the Defendants has been, and continues to be, an

employer engaged in interstate commerce and/or in the production of goods for commerce,

within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, each Defendant has

employed "employee[s]" including Plaintiffs and the FLSA Collective Members.

250.    The FLSA requires employers to pay non-exempt employees one- and one-half

times the regular hourly rate for all hours worked past 40 hours in a week. 29 U.S.C. § 207(a)(1).

The employee's regular hourly rate is determined by dividing the employee's total remuneration

in a given workweek—including commissions—by the number of hours the employee worked

during that workweek. 29 C.F.R. § 778.118.

251.    Technicians must therefore be paid an overtime premium of one-half the regular

rate for that workweek, in addition to their commission wages. 29 C.F.R. § 778.118.

252.    Each Plaintiff and FLSA Collective member was paid on a commission basis and

worked over 40 hours in at least one workweek during the three years preceding the filing of this

complaint.

253.    Defendants failed to pay Plaintiffs and the FLSA Collective Members, the amounts to which they are entitled under the FLSA when earned.

254.    As long as the Plaintiffs and the FLSA Collective had been employed as Technicians, some of whom started in early 2024, Defendants paid no overtime premium at all to the Plaintiffs.

255.    Upon information belief, Defendants paid no overtime premium at all to their Technicians for years.

256.    On July 11, 2025, Defendants admitted they failed to pay overtime and made overtime adjustment to Plaintiffs, who are currently employed Technicians, along with interest, but failed to pay liquidated damages.

257.    Defendants had no legitimate business reason for failing to pay overtime wages until in or about July 13, 2025, before issuing late overtime payments to current Technicians plus interest but no liquidated damages.

258.    Defendants had no legitimate business reason for issuing late overtime payments to current Technicians starting from January 2025 even if the Plaintiffs were Technicians earlier than January 2025.

259.    Defendants had no legitimate business reason for making no late overtime payments to former Technicians, plus interest and no liquidated damages, even after issuing late payments of overtime to their current Technicians.

260.    Defendants' actions have had the effect of evading compliance with the FLSA and its mandates.

261.    Defendants unlawful conduct has been willful and intentional since Defendants were aware and should have been aware the practices described in this Class Action Complaint were unlawful and Defendants made no good faith effort to comply with the FLSA.

262.    Because Defendants violations of the FLSA have been willful, a three-year statute of limitation applies. 29 U.S.C. § 255(a).

263.    As a result of Defendants willful violations of the FLSA, the Defendants are liable to the Plaintiffs and the FLSA Collective for liquidated damages in an amount equal to the amount of unpaid wages, prejudgment interest, attorney's fees, and costs, as well as injunctive relief under 29 U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**NYLL - Unpaid Commissions**
**(On behalf of Plaintiffs and all Rule 23 Class Members)**

264.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

265.    At all times relevant, Plaintiffs and Rule 23 Class have been employees within the meaning of NYLL 190 *et seq.,* and any supporting New York State Department of Labor Regulations.

266.    At all times relevant, Defendants have been employers within the meaning of NYLL 190 *et seq.,* and any supporting New York State Department of Labor Regulations.

267.    At all times relevant, Plaintiffs and Rule 23 Class were employed as Technicians within the meaning of NYLL § 190, *et seq.*, under a standard commission agreement that applied to all Plaintiffs and Rule 23 Class Members.

37

268.     It was an express or implied term of the commission agreement that the commissions would be calculated in accordance with the Defendants' written policies and Handbook.

269.     The wage payment provisions of Article 6 of the NYLL and any supporting New York State Department of Labor Regulations protect Plaintiffs and Members of the Rule 23 Class.

270.     The NYLL requires all employers to pay all wages due under the agreed-upon terms of employment and gives employees who are not so paid a cause of action to recover unpaid wages along with liquidated damages, attorneys' fees, and costs.

271.     Defendants failed to pay Plaintiffs and the Rule 23 Class commissions earned in accordance with the agreed-upon terms of their employment.

272.     Defendants failed to calculate Plaintiffs and the Rule 23 Class Members commissions in accordance with the terms of the commission agreement.

273.     Defendants made unlawful deductions and adjustments to commissions to reduce commissions.

274.     The unlawful deductions and adjustments to the commissions were not contained in any commission agreement and were not for the benefit of Plaintiffs and Rule 23 Class.

275.     Some, if not all, of the deductions and adjustments to commissions were illegal and unlawful.

276.     Defendants' unlawful deductions and adjustments to commissions were also in breach of the employee Handbook, by subjecting employees to a split commissions even though the laborer paired with a commission employee was a regular hourly employee which was not permitted in accordance with the employee Handbook and commission agreements.

277.     Defendants also failed to pay the employees flat rates on certain jobs as per their commission agreements and made other pay adjustments which did not comply with the written policies and with no notice to their employees.

278.     For instance, after Brandon Hoffert complained that he was not being paid a flat $300 fee for work that does not involve a dig, as required by his most recent August 28, 2025 commission agreement, Defendants changed the commissions agreement on September 15, 2025 but back dated it to August 4, 2025, to conceal their liability for failure to pay wages as per the agreement.

279.     Defendants knowingly and intentionally took unlawful deductions and unlawful adjustments to the commissions of Plaintiffs and the Rule 23 Class, and willfully violated NYLL, Article 6, § 193.

280.     Upon information and belief, Defendants also misclassified employees for purposes of their unscrupulous activity related to overtime for Technicians and the application of their written policies related to split commissions and other deductions.

281.     Due to Defendants violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, as provided for by NYLL Article 6, 198, reasonable attorney's fees, costs and pre-judgment and post judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law Article 6 - Unlawful Deductions from Wages
### (On behalf of Plaintiffs and all Rule 23 Class Members)

282.     Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

283.    Defendants made unlawful deductions from the wages of Plaintiffs in the Rule 23 Class.

284.    The deductions Defendants made from wages of Plaintiffs and the Rule 23 Class were not expressly authorized in writing by Plaintiffs in the Rule 23 Class and were not for the benefit of Plaintiffs in the Rule 23 Class.

285.    Some, if not all, of the deductions and adjustments to commissions were illegal and unlawful.

286.    Defendants knowing and intentionally took unlawful deductions from wages Plaintiffs and the Rule 23 Class, and willfully violated NYLL, Article 6, § 193.

287.    By Defendants knowing or intentional effort to make deductions from the wages of Plaintiffs and the Rule 23 Class, Defendants have willfully violated NYLL Article 6, § 193.

288.    Due to Defendants violations of the NYLL, Plaintiffs in the Rule 23 Class are entitled to recover from Defendants, their unpaid wages, liquidated damages, reasonable attorneys' fees, costs and prejudgment and post judgment interest, and reserve the right to seek liquidated damages under the NYLL.

**SIXTH CAUSE OF ACTION**
**New York Labor Law Article 19 – Failure to Pay Minimum Wages**
**(On behalf of Plaintiffs and all Rule 23 Class Members)**

289.    Plaintiffs, on behalf of themselves and the Rule 23 Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

290.    Regularly, Defendants failed to pay Plaintiffs and the Rule 23 Class, minimum wages to which they are entitled under the NYLL.

291.    Defendants engaged in widespread pattern, policy, and practice of violating the NYLL as detailed in this Class Action Complaint.

292.    At all times relevant, Plaintiffs and the Rule 23 Class have been employees and Defendants have been employers within the meeting of the NYLL §§ 190 and supporting New York State Department of Labor Regulations.

293.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Rule 23 Class.

294.    Defendants violated the NYLL minimum wage provisions because at times the commissions Technicians earned divided by the hours they worked in a week, resulted in Technicians being paid a regular rate below the minimum wage standard.

295.    For example, Nohle had four (4) hours of overtime in the week of September 15, 2025 and was paid $60. The $60 he received as commissions for that work week divided by 4 hours of overtime totals $15 an hour overtime rate, although he was paid only $10.00 an hour as his regular rate below the minimum wage, in violation of NYLL.

296.    Defendants were required to pay Plaintiffs and the Rule 23 Class commissions that were not below the minimum wage standard under the NYLL 652, and supporting New York State Department of Labor Regulations, including but not limited to, the Regulations and 12 N.Y.C.R.R. 137-1.2.

297.    Defendants failed to furnish Plaintiffs and the Rule 23 Class a wage statement with every payment of wages listing hours worked, rates paid, and gross wages as part of the minimum hourly wage rate in violation of the NYLL and the supporting New York State Department of Labor regulations, including but not limited to the regulations and 12 NYCRR 137-2.2.

298.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages under the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiffs and all Rule 23 Class Members)

299.    Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

300.    Plaintiffs and the Rule 23 Class entered into employee commission agreements with Defendants, including implied and/or express contracts.

301.    Defendants agreed to pay Plaintiffs and the Rule 23 Class a certain percentage of commissions for the services performed plus overtime.

302.    As consideration for these payments from Defendants, Plaintiffs and the Rule 23 Class agreed to, and did, provided labor and services for Defendants.

303.    Plaintiffs and the Rule 23 Class fully performed all their obligations under the commission agreement including other writings.

304.    Defendants breached the agreement by failing to pay Plaintiffs and the Rule 23 Class commissions and overtime for work exceeding 40 hours in a week.

305.    Defendants breached the agreement by making unlawful deductions and adjustments to the gross commissions and by failing to pay overtime.

306.    For instance, Defendants breached the agreement by subjecting employees to split commissions even if the laborer paired with a commission employee was not in the commission category and was a regular hourly employee which was not permitted in accordance with the employee Handbook.

307.     Defendants further breached their employment agreements by promising to pay overtime that was owed to Plaintiffs and the Rule 23 Class on a weekly basis, but unpaid, and thereafter by failing to calculate the overtime correctly, and issuing checks that the amounts represented overtime owed to Plaintiffs and the Rule 23 Class, although underpayments of the actual overtime owed to Plaintiffs and the Rule 23 Class.

308.     Defendants' failure to comply with the terms of their employment agreements and the law and their further actions constitutes a breach of contract.

309.     As a result of the foregoing Plaintiffs and the Rule 23 Class suffered actual damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of Plaintiffs and all Rule 23 Class Members)**

310.     Plaintiffs, on behalf of themselves and the Rule 23 Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

311.     In the alternative, Plaintiffs and the Rule 23 Class have not been paid overtime, wages, even though they have performed services for Defendants.

312.     Since Plaintiffs and the Rule 23 Class have performed the duties of their jobs, and services on behalf of Defendants while Defendants have been enriched at the expense of Plaintiffs and the Rule 23 Class, and the circumstances are such that equity and good conscience require restitution.

313.     Due to Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to be paid their unpaid wages, along with consequential damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment in trust.

## NINTH CAUSE OF ACTION
### NYLL - Failure to Provide Proper Wage Notices
### (On behalf of Plaintiffs and the Rule 23 Class Members)

314.     Plaintiffs, on behalf of themselves and the Rule 23 Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

315.     Defendants failed to furnish Plaintiffs and the Rule 23 Class wage notices as required by NYLL, Article 6, § 195(1) in English or in the language identified by each employee is a primary language, at the time of hiring, and on or before February 1 of each subsequent year the employees employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, peace, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular payday designated by the employer in accordance with the NYLL, Article 6, § 191, the name of the employer; any doing business as names used by employer; the physical address of the employer's main officer principal place of business, and the mailing address of different; the telephone number of the employer; plus such other information as the Commissioner deems material and necessary.

316.     Due to Defendants violations of NYLL, Article 6, § 195(1)(a), Plaintiffs and the Rule 23 Class are entitled to statutory penalties in the amount of $50 for each workday that Defendants failed to provide Plaintiffs and Members of the Rule 23 Class with proper wage notices, or a total of $5,000 each, and reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article § 198 (1-b).

## TENTH CAUSE OF ACTION
### NYLL - Failure to Provide Proper Wage Statements
### (On behalf of Plaintiffs and the Rule 23 Class Members)

317.   Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

318.   Defendants failed to furnish Plaintiffs and the Rule 23 Class with the statement with every payment of wages as required by NYLL, Article 6, § 195(3) listing: the dates of work covered by that payment of wages; neighbor employee; name from employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, peace, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

319.   Due to Defendants violations of NYLL Article 6, § 195, Plaintiffs and the Rule 23 Class are entitled to statutory penalties of $250 for each workday that Defendants failed to provide Plaintiffs and Members of the Rule 23 Class with proper wage statements, or a total of $5,000 each, and reasonable attorneys' fees, costs, and injunctive and declaratory relief as provided for by NYLL, Article 6, § 198(1-d).

**WHEREFORE**, Plaintiffs, collectively on behalf of all other similarly situated persons, pray for the following relief:

A.   Unpaid overtime and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.,* and the supporting United States Department of Labor Regulations to Plaintiffs and all those similarly situated;

B.   Commissions owed but unpaid as a result of unlawful adjustments and unlawful deductions from wages, along with liquidated damages and interest, plus civil penalties,

pursuant to NYLL, Article 6, § 190 *et seq.* and Article 19, § 650 *et seq.* and the supporting New York State Department of Labor Regulations, to Plaintiffs and all those similarly situated;

C. Unpaid liquidated damages for overtime not paid when earned;

D. Minimum wages for services performed and additional amount as liquidated damages;

E. Certification of this case as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F. Designation of Plaintiffs as Representatives of the Rule 23 Class, and counsel of record as Class Counsel;

G. Pre-judgment interest and post-judgment interest;

H. An injunction requiring Defendants to pay all statutorily required overtime and wages pursuant to the NYLL;

I. Issuance of a declaratory judgment that the practices complained of in this Class Action complaint are unlawful under NYLL Article 6, §§ 190, *et seq.* and 193 and NYLL Article 19, § 650 *et seq.* and the supporting New York State Department of Labor Regulations;

J. Statutory penalties of $50 for each workday the Defendants failed to provide Plaintiffs and the Members of the Rule 23 Class with proper wage notices, or total $5,000 each, as provided for by NYLL Article 6, § 198;

K. Statutory penalties of $250 for each workday that Defendants failed to provide Plaintiffs and the Members of the Rule 23 Class with proper wage statements, or total of $5,000 each, as provided for by NY LL, Article 6, § 198;

L. Reasonable attorneys' fees and costs of the action; and

M. Award such other and further relief as this Honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues set forth herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 1, 2025                    Respectfully Submitted,

*Carol Crossett*
_____
Carol A. Crossett
Bar Membership NDNY: 705491
New York State Bar No: 4020038
Tully Rinckey PLLC
420 Lexington Avenue, Ste. 1601
New York, NY 10170
Phone: (646) 813-2966
Email: ccrossett@tullylegal.com

Attorneys for Plaintiffs

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

*Chris Nohle*
_____
Signature

Chris Nohle
_____
Print Full Name

10 hungerford avenue
_____
Street Address

Adams NY                         13605
_____    _____
City, State                          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

Anthony Gardynski
_____
Print Full Name

101 Bennett ave
_____
Street Address

Syracuse, NY              13209
_____      _____
City, State                          Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_Joey Haines_
Signature

_Joseph Haines_
Print Full Name

_202 N. Main_
Street Address

_Syracuse, NY 13212_
City, State                    Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether its favorable or unfavorable.

_____
Signature

**Daquell
Simmons**

_____
Print Full Name

**2301 Sitton
place apt 71**

_____
Street Address

**Jacksonville nc**          **28546**

_____          _____
City, State                        Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

Brandon hoffert
_____
Print Full Name

3182 main st
_____
Street Address

constableville ny 13325
_____
City, State                    Zip Code

## **FAIR LABOR STANDARDS ACT CONSENT**

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

 Cole Pendock
Print Full Name

 2186 connell terrace
Street Address

 Baldwinsville NY            13027
City, State                 Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_Michael Terrizzi_
Signature

_Michael Terrizzi_
Print Full Name

_695 Virginia Ave_
Street Address

_Bellmore N.Y_        _11710_
City, State        Zip Code

## <u>FAIR LABOR STANDARDS ACT CONSENT</u>

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

_Kyle Robinson_____
Print Full Name

_311 Melrose ave_____
Street Address

_Syracuse, New York_____     _13206_____
City, State                                       Zip Code

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

_kalob roberts_____
Print Full Name

_11933 cobbville rd_____
Street Address

_Adams Center, NY_____    _13606_____
City, State                              Zip Code

## **FAIR LABOR STANDARDS ACT CONSENT**

I consent to be a party Plaintiff in a lawsuit against Corporate Defendants and against the Individual Defendants in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

_____
Signature

_Zachary Jordan Krajewski_____
Print Full Name

_425 Centerpointe Cir_____
Street Address

_Altamonte Springs, FL_____     _32701_____
City, State                              Zip Code